COMMONWEALTH *vs.* JAMES MORGAN.

Suffolk.   May 23, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Larceny — Evidence — Alibi — Photograph — Contradiction of Witness — Preliminary Question of Fact.*

At the trial of an indictment charging the defendant with larceny of certain promissory notes and orders for money from A., the defendant was identified by A. and another witness for the government as the man who stepped up to A. in a bank and engaged him in conversation, and simultaneously with whose departure A. discovered that the bank-book, notes, and orders which he had passed into the teller's window were gone. *Held,* that the jury was not bound to believe the testimony which was introduced as to an alibi, and that it was for them to say, upon all the evidence, whether the defendant was in the bank at the time stated, and took the notes and orders.

One of the government witnesses testified that the defendant had, at the time at which he was charged with larceny in 1889, side whiskers and a mustache. As bearing on the question of identity, certain witnesses for the defendant testified that they had known him since the spring of 1887, and that he had never worn side whiskers. *Held,* that a photograph was properly admitted for the purpose of showing that when it was taken, in July, 1887, the defendant wore side whiskers, and thus of contradicting the witnesses who had testified to the contrary.

Whether a photograph is sufficiently verified to be admitted in evidence is a preliminary question of fact, to be decided by the judge presiding at the trial, and not open to exception.

INDICTMENT, charging the defendant with larceny of certain promissory notes and orders for money from one Wright, on October 4, 1889.

At the trial in the Superior Court, before *Fessenden,* J., two witnesses for the government, said Wright and the cashier of the bank, testified, among other things, that Wright entered the National Bank of the Republic in Boston between 12.30 and 1 P. M., went to the teller's window and passed a bank-book containing notes and orders for money into the teller's window,

and waited for him to take it; that the teller was busy on the inside of the window, and did not look up; that immediately after Wright laid the notes and orders down, a man, identified by the witnesses as the defendant, stepped up to Wright, and presented a card or paper, and asked Wright where he could get it filled out; that the conversation lasted between two and three minutes, during which time Wright, in order to direct the defendant where to go, turned his back to the notes and orders; and that the defendant then went out, and when Wright turned round again to where he had put the notes and orders and book, he found they were gone. The teller was engaged in working on his books, and did not have or see the book, notes, or orders. Wright and the cashier testified that the defendant at that time had side whiskers and a mustache. Only three witnesses testified as to what occurred at the time of the larceny, and about the presence of the defendant in the bank. Wright testified that neither outside of the rail nor anywhere in the bank did he see any other person than the defendant, while the cashier testified that a " third person was in the bank; they came in together, — one, one door, and the other, the other door, — the third person coming in and going out the further door from me, so that I could not see him so well."

There was no testimony that any one saw the defendant take the money or orders.

The defence was an alibi. There was evidence on the part of the defendant that on the day of the alleged offence he was in Canada, and that he did not wear side whiskers. Four witnesses testified that they had known the defendant for some time before the date of the alleged offence, (two of them testifying that they had known him as early as and since the spring of 1887,) that he was in Canada on the day of said offence, and for some time previous to and after that day, and that he had never worn side whiskers. On rebuttal, the government, to contradict the witnesses for the defence, offered the testimony of a police officer of Fitchburg, who testified that in July of 1887 he arrested the defendant in Fitchburg; that he took him to a photographer to have his picture taken; that he was present and stood by the defendant when the photograph was taken; that the defendant went without objection to the pho-

tographer to have the photograph taken, but did not request to be taken to the photographer; and that the defendant then wore side whiskers. This was objected to by the defendant, on the ground that the fact that he wore side whiskers in July, 1887, was too remote, and that it was immaterial, and did not contradict the testimony of the defendant's witnesses. The evidence was admitted, and exceptions taken. A photograph of the defendant was produced, and the officer testified that it was taken in his presence, in July, 1887. The photograph was admitted subject to the defendant's exception that the government could not contradict a witness on an immaterial point, because the photograph had been taken while the defendant was under arrest, and because the defendant was not compelled to furnish evidence against himself; and because the witness was not a photographer, and qualified to pass upon the question of identity of the photograph, that is, that the photograph of the defendant was a likeness at that time.

The defendant asked the judge to rule that, upon all the evidence, the defendant was entitled to a verdict of not guilty, which the judge refused to do; and the defendant excepted.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*P. J. Casey*, for the defendant.

*G. C. Travis*, First Assistant Attorney General, for the Commonwealth.

MORTON, J. The defendant was identified by Wright and another witness for the government as the man who stepped up to him in the bank and engaged him in conversation, and simultaneously with whose departure Wright discovered that the notes, orders, and book were gone. The jury was not bound to believe the testimony as to the alibi. It was for the jury to say, upon all the evidence, whether the defendant was in the bank at the time the witnesses for the government said he was, and whether he took or had a hand in taking the notes and orders which he was accused of stealing.

One of the government witnesses said that the defendant had at the time side whiskers and a mustache. As bearing on the question of identity, certain witnesses for the defendant testified that they had known him since the spring of 1887, and that he

had never worn side whiskers. The photograph was properly admitted for the purpose of showing that when it was taken, which was in July, 1887, the defendant wore side whiskers, and thus of contradicting the witnesses, who had testified to the contrary. *Blair* v. *Pelham*, 118 Mass. 420. *Randall* v. *Chase*, 133 Mass. 210. *Commonwealth* v. *Goodnow*, 154 Mass. 487. *Commonwealth* v. *Campbell*, 155 Mass. 537. Whether it was sufficiently verified was for the presiding justice, and his decision is not subject to exception. *Blair* v. *Pelham*, *ubi supra.*

The defendant has argued other points upon which he does not appear to have taken any exceptions or asked any ruling, and which cannot be raised here for the first time. We have considered only the points on which exceptions were taken and which have been argued.                        *Exceptions overruled.*